### Application of ST. PETERSBURG LIMOUSINE SERVICE, Inc.

Docket No. 9537-CCB, Order No. 8409.

Florida Public Service Commission.

April 21, 1969.

Lewis H. Hill, Jr. and Richard Wilson, both of Tampa, for the applicant.

James E. Wharton, Orlando, for Tamiami Trail Tours, Inc., protestant.

John M. Allison, Tampa, for Southern Tours, Inc. and Gulf Coast Motor Line, Inc., protestants.

Wayne K. Ramsay, Jacksonville, for Greyhound Lines, Inc., protestant.

Chairman WILLIAM T. MAYO, Commissioners JERRY W. CARTER and JESS YARBOROUGH participated in the disposition of this matter.

BY THE COMMISSION.

Pursuant to notice, the commission by its duly designated examiner, John C. Vogt, Jr., held a public hearing on this matter in Tampa on October 8, 1968.

The examiner's report and recommended order was duly served on all of the parties. Exceptions to the recommended order were filed with the commission. Oral argument was heard on said exceptions and replies thereto on April 1, 1969. The entire record herein, including the application, the testimony adduced at the public hearing, the exceptions to the recommended order and oral argument heard thereon, has been examined by the full commission. After due consideration, the commission now enters its order in this cause.

The applicant here seeks to remove the vehicular restriction on its certificate L-115 authorizing limousine transportation of air line passengers, personnel and baggage between Tampa International Airport and all points and places in Sarasota County, Manatee County, and Pinellas County south of Largo Road. By order no. 8036 in this docket, the commission determined that certificate L-115 had a vehicular size restriction.

The applicant is qualified in all respects to provide the proposed transportation. It has been and is operating a limousine service with vehicles of nine passengers or less capacity, including the driver.

In support of the application, applicant submitted the testimony of witnesses representing two major air lines utilizing the Tampa International Airport and two witnesses representing the administrative and engineering department of the Hillsborough County Aviation Authority which operates Tampa International Airport. It appears that the air line transportation business has been growing steadily over the past years and that a good portion of this business is group travel or convention travel. Further, due to weather problems developing unexpectedly, as well as late arriving flights,

a frequent extra demand is placed upon the ground transportation facilities at Tampa International Airport. In March of 1968, with schedules arriving on or within a few minutes of scheduled time, Eastern Airlines had 650 passengers through their baggage claim area within a space of twenty minutes. Approximately 120 to 130 flights per day use Tampa International Airport producing roughly about 6,000 passengers boarding and deboarding each day through the airport, and passenger use of the airport is increasing approximately 20 per cent each year. Although a new terminal facility is presently under construction at the airport, it is not projected to be in use until the end of 1970. There exists a serious problem at the present facility involving a lack of proper curbside space as well as parking and storage space in and about the terminal facility. The aviation authority has been unsuccessful in its attempts to solve this problem to date; however, the congestion would be alleviated to some degree by an increase in the passenger capacity of vehicles providing ground transportation. By reason of the ever increasing passenger load carried by the airport facility this need will continue to increase and will, in all probability, exist after the completion of construction and operation of the new airport facility.

The commission is aware of the danger, as expressed in Connecticut Limousine Service, Inc. v. United States, 281 Fed. Supp. 681, that the removal of the vehicular restrictions of a limousine service makes it possible for the limousine service to change its mode of operation to resemble a bus carrier more than a limousine carrier and by so doing abandon a needed public service of providing an expedited traditional limousine-type service to air line passengers. However, considering all of the facts and circumstances involved in the present situation, the commission does not find that this danger exists here to any substantial degree provided the vehicle capacity does not exceed 21 passengers.

In reaching the conclusion that public convenience and necessity requires the modification of the vehicular restriction placed on applicant, the commission finds that the applicant providing a limousine service as a limited common and an irregular route carrier does not have the legal right to operate a charter service in connection with its authority under the existing provisions of §323.14, Florida Statutes, except that the commission finds that the applicant should be allowed to transport groups originating at the airport and destined for the territory served by the applicant or for similar groups originating in the territory served by the applicant and destined for the airport.

The protestants presented evidence generally relating to their ability, both operationally and economically, to continue to provide any charter service needed in the area in question. No protestants

appeared who could provide a similar type limousine service as operated by applicant.

From the foregoing, the commission concludes that applicant has shown that public convenience and necessity requires the grant of the application to the extent that the vehicular restriction should be removed to allow applicant to use vehicles with a passenger capacity of not more than 21 passengers; and, that the grant of the application to this extent will not adversely affect the existing transportation facilities and transportation as a whole in the territory involved provided applicant's authority is not interpreted to authorize a charter service.

It is therefore ordered that the application of St. Petersburg Limousine Service, Inc., Post Office Box 413, St. Petersburg, Florida, 33731, to remove the vehicular restriction on its certificate L-115 be and the same is hereby granted to the extent that applicant is authorized to use vehicles with a passenger capacity of not more than 21 passengers, restricted against charter rights. This restriction shall not preclude applicant's servicing of groups originating at the airport and destined for the territory served by the applicant or for similar groups originating in the territory served by the applicant and destined for the airport.